RCVD - USDC - CHAS, SC
2026 AUG 25 PM3:44

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

LAWRENCE WHALEY II,

Plaintiff,

v.

EQUIFAX INFORMATION SERVICES, LLC,

Defendant.

Civil Action No.
(to be assigned)
2:26-cv-03668-BHH-PJG

JURY TRIAL
DEMANDED

**COMPLAINT FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**

Plaintiff Lawrence Whaley II, appearing pro se, brings this action against Defendant Equifax Information Services, LLC for violations of the Fair Credit Reporting Act, 15 U.S.C. 1681 et seq. (the FCRA), and alleges as follows:

## I. PRELIMINARY STATEMENT

1. This is an action for actual, statutory, and punitive damages arising from Defendant Equifax Information Services, LLC (Equifax) reporting internally contradictory derogatory account information about Plaintiff, responding to Plaintiff's detailed written dispute with cosmetic date changes that created new contradictions while every substantive defect remained, and then ignoring the statutory deadline and content requirements for Plaintiff's method of verification request.

2. Equifax's own documents tell the story. Its March 18, 2026 file disclosure, its May 20, 2026 dispute results, and the before and after versions printed inside those results report the same accounts with different closure dates, different last-payment dates, delinquency histories that shift by a month between versions, first-delinquency dates that predate or postdate the delinquencies in the same tradeline's own payment grid, and major-delinquency dates that coincide with the date

the data was pulled rather than any event in the account's life. Equifax certified every version as investigated.

## II. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction under 28 U.S.C. 1331 because this action arises under a federal statute, and under 15 U.S.C. 1681p, which permits an action to enforce liability under the FCRA to be brought in any appropriate United States district court without regard to the amount in controversy.

4. Venue is proper in this District under 28 U.S.C. 1391(b) because a substantial part of the events giving rise to the claims occurred in this District, where Plaintiff resides in Charleston County, where Equifax mailed its investigation results, and where the inaccurate information was published and caused harm, and because Equifax is subject to personal jurisdiction in this District and therefore resides here for venue purposes under 28 U.S.C. 1391(c)(2). Assignment to the Charleston Division is proper because Plaintiff resides in Charleston County.

## III. PARTIES

5. Plaintiff Lawrence Whaley II is a natural person residing at 2938 Fontana St. Johns Island, South Carolina 29455. Plaintiff is a consumer as that term is defined by 15 U.S.C. 1681a(c).

6. Defendant Equifax Information Services, LLC is a limited liability company organized under the laws of the State of Georgia with its principal place of business at 1550 Peachtree Street NW, Atlanta, Georgia 30309. Equifax may be served through its registered agent in South Carolina.

7. Equifax is a consumer reporting agency as that term is defined by 15 U.S.C. 1681a(f). For monetary fees, Equifax regularly engages in whole or in part in the practice of assembling and

evaluating consumer credit information for the purpose of furnishing consumer reports to third parties, and it uses means and facilities of interstate commerce to prepare and furnish those reports.

## IV. FACTUAL ALLEGATIONS

8. Equifax maintains a consumer file on Plaintiff and prepares and furnishes consumer reports about Plaintiff from that file. Equifax documented the contents of that file in a written disclosure dated March 18, 2026, confirmation number 6077575396 (the March 2026 Disclosure), and in dispute results dated May 20, 2026, confirmation number 6124574042 (the May 2026 Results).

### *A. The Discover tradeline, account ending 6525*

9. Equifax reports a Discover credit card, account ending 6525, opened July 20, 2024, with a status of Charge Off, a balance of $9,515, an Amount Past Due of $9,515, a Charge Off Amount of $9,515, a credit limit of $8,500, and a Date of First Delinquency of December 3, 2024.

10. The reported first-delinquency date is contradicted by the tradeline's own payment grid, which rates the account with no delinquency of any kind until a 30-day rating in March 2025, three months after the account had supposedly become delinquent, and by the tradeline's own last-payment date of December 31, 2024, four weeks after the claimed delinquency commenced.

11. The payment grid then climbs 30, 60, 90, 120, and 150 days from March through July 2025 and reports a charge off beginning August 2025, skipping the 180-day stage entirely. The account history shows the balance continuing to grow month over month after Equifax began reporting the account closed by the credit grantor, from $8,590 in March 2025 to $9,515 by July 2025, at which point the entire balance became the reported past-due amount, republished every month thereafter.

12. Equifax has reported three different versions of when this account closed and when it was last paid. The March 2026 Disclosure reported no Date Closed at all and a last payment of December 31, 2024. The before version in the May 2026 Results reported a Date Closed of February 1, 2025 and a last payment of December 1, 2024. The after version reported a Date Closed of February 2, 2025 and a last payment of December 31, 2024. Equifax announced that the disputed information should be updated, changed those dates by one day and thirty days respectively, and left the false first-delinquency date, the impossible ladder, and the full-balance monthly past-due reporting untouched.

***B. The JPMCB tradelines, accounts ending 4465 and 8254***

13. Equifax reports a JPMCB Card Services flexible spending credit card, account ending 4465, opened November 22, 2022, with a status of Charge Off, a balance of $13,952, an Amount Past Due of $13,952, a Charge Off Amount of $13,952, a credit limit of $12,000, and a Date of First Delinquency of January 3, 2025.

14. The delinquency history Equifax reports for this account moved by an entire month between its own versions. The March 2026 Disclosure rated the account 30 days past due in January 2025, escalating to 180 days by June 2025 with charge off from July 2025. The May 2026 Results, before and after, rate the account 30 days past due in December 2024 and 60 days in January 2025, with charge off from June 2025. A delinquency either occurred in a given month or it did not; both chronologies cannot be true, and Equifax reported each as verified fact.

15. The versions likewise disagree on when the account closed, January 1, 2025 in the before version, January 2, 2025 in the after version, and no date at all in the March 2026 Disclosure, and on the last payment date, which shifted between October 1, October 31, and back again. Meanwhile the account history shows the balance growing from $12,008 in December 2024 to

$13,952 by June 2025, after every version's first-delinquency date, with the entire grown balance then republished monthly as past due.

16. Equifax also reports a second JPMCB account, a business credit card ending 8254, opened July 18, 2024, with a status of Charge Off, a balance of $8,189 against an $8,000 limit, and a Date of First Delinquency of April 10, 2025. Its payment grid contains no 30-day rating at all; the account goes from no reported delinquency directly to 60 days past due in May 2025. The before version in the May 2026 Results reported a Date Major Delinquency First Reported of April 17, 2026, which is not an event in the account's history but the very day the data was compiled, a year after the account charged off. In the after version Equifax removed that date entirely, added a Date Closed of May 26, 2025 that had never been reported before, and added a new narrative code describing the account as a business account with a personal guarantee, all while characterizing its results as a mere update of the disputed information.

*C. The Navy Federal tradeline, account ending 5891*

17. Equifax reports a Navy Federal Credit Union credit card, account ending 5891, opened August 20, 2016, with a status of Charge Off, a balance of $10,732 against a $10,500 limit, an Amount Past Due of $10,732, a Charge Off Amount of $10,732, and a Date of First Delinquency of April 2, 2025.

18. The tradeline's own payment grid rates the account 30 days past due in February 2025, two months before the reported first delinquency, then reports no data for March, then rates the account 30 days past due again in April. An account cannot be delinquent before its first delinquency, and a 30-day arrearage cannot vanish for a month and reappear at 30 days with no intervening payment; none is reported.

19. The ladder then runs 60, 90, 120, and 150 days from May through August 2025 and jumps to charge off in September 2025, skipping the 180-day stage. The before version in the May 2026 Results reported a Date Major Delinquency First Reported of April 1, 2026, again the approximate date of the data pull, months after the reported charge off; the after version deleted that date. The after version also changed the account's High Credit from $10,742 to $10,732 and deleted a reported scheduled-payment amount, while Equifax described its conclusion as an update to the disputed information.

20. Across all four accounts described above, every version reported the entire account balance as a fresh monthly past-due amount and assigned a new CO rating every month through 2026 on closed, static accounts, presenting each historical charge off as new derogatory activity recurring monthly.

***D. Plaintiff's disputes and Equifax's responses***

21. On or about April 26, 2026, Plaintiff sent Equifax a detailed written dispute by USPS certified mail, tracking number 9207190235890900038952009, identifying the inaccuracies in the tradelines described above and requesting reinvestigation and correction or deletion.

22. Equifax responded with the May 2026 Results. For each of the accounts described above, Equifax stated that its investigation concluded the disputed information should be updated. The updates consisted of the cosmetic and contradictory date changes described above. Every substantive inaccuracy Plaintiff identified, the false first-delinquency dates, the impossible delinquency ladders, the skipped stages, the balances exceeding limits and growing after closure, and the full-balance monthly past-due republication, remained on Plaintiff's file, and remains there today.

23. On or about June 29, 2026, Plaintiff sent Equifax a written request by USPS certified mail, tracking number 9207190235890900004l138742, demanding pursuant to 15 U.S.C. 1681i(a)(6)(B)(iii) and 1681i(a)(7) a description of the procedure used to determine the accuracy and completeness of the disputed information, including the business name, address, and telephone number of each furnisher contacted.

24. Section 1681i(a)(7) requires that description to be provided within fifteen days of the request. Equifax did not respond within fifteen days. When it eventually responded, it provided the same form of boilerplate dispute-results language as before, describing no procedure, identifying no furnisher contact, and identifying no document or record relied upon.

25. On information and belief, Equifax's reinvestigation consisted of transmitting automated consumer dispute verification codes to the furnishers through the e-OSCAR system and accepting the furnishers' coded responses, without reviewing any underlying account documentation and without examining the contradictions apparent from a comparison of Equifax's own successive documents.

***E. Harm to Plaintiff***

26. As a direct and proximate result of Equifax's conduct, Plaintiff has suffered actual damages, including a suppressed credit score and diminished creditworthiness while approximately $42,388 in internally contradictory derogatory balances are republished monthly as currently past due on his file, damage to reputation, out-of-pocket costs for certified mailings, lost time, and emotional distress, including frustration, anxiety, and helplessness at receiving update stamps on data that shifted with every letter while every defect he identified survived.

27. Equifax's conduct was willful. Equifax announced investigations whose only output was to alter dates by a day or a month in mutually contradictory ways, reported data-pull dates as

account events, blew through a statutory fifteen-day deadline, and refused to disclose any method of verification. In the alternative, Equifax's conduct was negligent.

## V. CAUSES OF ACTION

*COUNT ONE: Violation of 15 U.S.C. 1681e(b) (Willful, or in the Alternative Negligent)*

28. Plaintiff realleges and incorporates every preceding paragraph as if fully set forth herein.

29. Equifax prepared consumer reports concerning Plaintiff and failed to follow reasonable procedures to assure maximum possible accuracy of the information in those reports, in violation of 15 U.S.C. 1681e(b), by reporting the inaccurate, internally contradictory, and materially misleading information described above, both before and after Plaintiff identified the inaccuracies in writing.

30. Equifax's violations of 15 U.S.C. 1681e(b) were willful within the meaning of 15 U.S.C. 1681n, or in the alternative negligent within the meaning of 15 U.S.C. 1681o, and Plaintiff is entitled to recover actual damages, statutory damages of not less than $100 and not more than $1,000, punitive damages, and costs.

*COUNT TWO: Violation of 15 U.S.C. 1681i (Willful, or in the Alternative Negligent)*

31. Plaintiff realleges and incorporates every preceding paragraph as if fully set forth herein.

32. After receiving Plaintiff's written disputes, Equifax violated 15 U.S.C. 1681i(a)(1)(A) by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate; violated 15 U.S.C. 1681i(a)(2) on information and belief by failing to provide the furnishers with all relevant information regarding the disputes that Plaintiff had submitted; violated 15 U.S.C. 1681i(a)(4) by failing to review and consider all relevant information submitted by

Plaintiff; violated 15 U.S.C. 1681i(a)(5)(A) by failing to promptly delete or modify information that was inaccurate, incomplete, or could not be verified; and violated 15 U.S.C. 1681i(a)(6)(B)(iii) and 1681i(a)(7) by failing to provide, within fifteen days of Plaintiff's June 29, 2026 request, or at all, any description of the procedure used to determine the accuracy and completeness of the disputed information, including the business names, addresses, and telephone numbers of the furnishers contacted.

33. Equifax's violations of 15 U.S.C. 1681i were willful within the meaning of 15 U.S.C. 1681n, or in the alternative negligent within the meaning of 15 U.S.C. 1681o, and Plaintiff is entitled to recover actual damages, statutory damages of not less than $100 and not more than $1,000, punitive damages, and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendant Equifax Information Services, LLC and award Plaintiff:

a. Actual damages pursuant to 15 U.S.C. 1681n(a)(1)(A) and 15 U.S.C. 1681o(a)(1);

b. Statutory damages of not less than $100 and not more than $1,000 pursuant to 15 U.S.C. 1681n(a)(1)(A);

c. Punitive damages pursuant to 15 U.S.C. 1681n(a)(2);

d. The costs of this action pursuant to 15 U.S.C. 1681n(a)(3) and 15 U.S.C. 1681o(a)(2), together with reasonable attorney's fees should Plaintiff retain counsel;

e. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

Dated: August 9, 2026

Respectfully submitted,

Lawrence Whaley II

Lawrence Whaley II
Plaintiff, Pro Se
2938 Fontana St
Johns Island, South Carolina 29455
lwhaleyii@gmail.com